Erica J. Van Loon (Bar No. 227712)
evanloon@nixonpeabody.com
Andrew H. Winetroub (Bar No. 291847)
awinetroub@nixonpeabody.com
**NIXON PEABODY LLP**
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Tel: (213) 629-6000
Fax: (213) 629-6001

David L. May (Admitted *Pro Hac Vice*)
dmay@nixonpeabody.com
Jennette W. Psihoules (Admitted *Pro Hac Vice*)
jpsihoules@nixonpeabody.com
**NIXON PEABODY LLP**
799 9th Street NW
Washington, DC 20001-4501
Tel: (202) 585-8000
Fax: (202) 585-8080

*Attorneys for Plaintiff*
*Tim Teichert, Personal Representative of the*
*Estate of Minerva Teichert*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| TIM TEICHERT, PERSONAL REPRESENTATIVE OF THE ESTATE OF MINERVA TEICHERT,<br><br>Plaintiff,<br><br>vs.<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, BRIGHAM YOUNG UNIVERSITY, BRIGHAM YOUNG UNIVERSITY MUSEUM OF ART, DESERET MANAGEMENT CORPORATION, DESERET BOOK COMPANY and LATTER-DAY HOME LLC,<br><br>Defendants. | Case No.: 8:23-cv-00180-FWS-JDE<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**<br><br>Judge: Hon. Fred W. Slaughter<br>Hearing Date: May 18, 2023<br>Time: 10:00 a.m.<br>Courtroom: 10D |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...........................................................................................1

II.   RELEVANT FACTUAL BACKGROUND .........................................2

    a.   The Teichert Estate Owns the Copyrights in Minerva Teichert's Works ..........................................................................................2

    b.   Defendants' Infringement and Contacts with California ............3

    c.   The Wyoming Litigation ............................................................4

III.  LEGAL STANDARDS ...........................................................................6

    a.   "First to File" Rule ...................................................................6

    b.   Motion to Transfer Pursuant to 28 U.S.C § 1404(a) ...................7

IV.   ARGUMENT .............................................................................................8

    a.   The First-to-File Rule Is Inapplicable ........................................8

        i.    Only One of the Defendants is a Party to the Wyoming Litigation ..........................................................................8

        ii.   The Material Facts and Legal Issues Are Dissimilar .......10

    b.   28 U.S.C § 1404(a) Does Not Justify Transfer .........................13

        i.    Defendants Fail to Establish that Plaintiff Could Have Brought This Case In Wyoming .....................................13

        ii.   Plaintiff's Choice of Forum ............................................15

        iii.  Defendants Have Failed to Identify Witnesses for Whom this Court is Inconvenient ...............................................16

        iv.   The Parties' Contacts With California, Including those Relating to Plaintiff's Claims, Weigh Against Transfer ..18

        v.    California Is Most Familiar with the Claims Asserted Under California Law .....................................................20

        vi.   Ease of Access to Sources of Proof Weighs Against Transfer ..........................................................................21

        vii.  Compelling Attendance of Non-Party Witnesses Weighs Against Transfer to Wyoming ........................................22

        viii. The Remaining *Jones* Factors Are Neutral .....................23

V.    CONCLUSION ......................................................................................25

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstar Marketing Group, LLC v. Your Store Online, LLC*,
  666 F. Supp. 2d 1109 (C.D. Cal. 2009)...............................................15, 20

*Anschutz Co v. Deutsche Bank Securities, Inc.*,
  No. C 09-03780 SI, 2010 WL 1464375 (N.D. Cal. April 13,
  2010) ..............................................................................................13, 17

*Awarepoint Corp. v. KMW Group, Inc.*,
  No. 11-cv-2893-H (RBB), 2012 WL 13028110 (S.D. Cal.
  Jan. 26, 2012)...........................................................................................7

*Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp.*,
  742 F. Supp. 2d 1101 (C.D. Cal. 2010)........................................................9

*Brown v. Abercrombie & Fitch Co.*,
  No. 4:13-cv-05205 YGR, 2014 WL 715082 (N.D. Cal. Feb.
  14, 2014) ..................................................................................................15

*Cedars-Sinai Med. Ctr. V. Shalala*,
  125 F.3d 765 (9th Cir. 1997) ....................................................................10

*CoxCom, Inc. v. Hybrid Patents Inc.*,
  No. 06-cv-07918, 2007 WL 2500982 (N.D. Cal. Aug. 30,
  2007) ........................................................................................................17

*E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*,
  No. CV F 03-5412 AWI LJO, 2008 WL 2220396 (E.D. Cal.
  May 27, 2008)............................................................................................9

*Earth Island Institute v. Quinn*,
  56 F.Supp.3d 1110 (N.D. Cal. 2014)............................................................8

*Florens Container v. Cho Yang Shipping*,
  245 F. Supp. 2d 1086 (N.D. Cal. 2002)......................................................16

*Guinago v. Datalogix Texas Inc.*,
    No. 2:14-cv-02103-SVW-Ex, 2014 WL 12688862 (C.D. Cal.
    June 5, 2014) ..................................................................................22, 23

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) .........................................................................15

*Harris v. Emus Records Corp.*,
    734 F.2d 1329 (9th Cir. 1984) .........................................................11

*Hatch v. Reliance Ins. Co.*,
    758 F.2d 409 (9th Cir. 1985) .............................................................7

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) .....................................................*passim*

*Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*,
    787 F.3d 1237 (9th Cir. 2015) .........................................................11

*Lax v. Toyota Moto Corp.*,
    65 F. Supp.3d 772 (N.D. Cal. 2014) ...............................................16

*Metz v. U.S. Life Ins. Co. in City of New York*,
    674 F. Supp. 2d 1141 (C.D. Cal. 2009) ..........................................21

*Ocampo v. Heitech Services, Inc.*,
    No. 4:19-cv-4176-KAW, 2019 WL 5395108 (N.D. Cal. Oct.
    22, 2019) ..........................................................................................20

*Pushman v. N.Y. Graphic Soc'y, Inc.*,
    39 N.E.2d 249 (N.Y. 1942) .........................................................11, 12

*Safari Club Int'l v. Rudolph*,
    No. SACV 13-1989 JVS (ANx), 2014 WL 12595128 (C.D.
    Cal. Feb. 24, 2014) .......................................................................11, 19

*Safarian v. Maserati North America, Inc.*,
    559 F. Supp. 2d 1068 (C.D. Cal. 2008) ............................................8

*Stephens v. Cady*,
    55 U.S. 528 (1853) ...........................................................................12

*Tricom Research, Inc. v. Tactical Support Equipment, Inc.*,
    Case No. CV 08–2130–RGK, 2008 WL 11338513 (C.D. Cal.
    June 27, 2008) ............................................................................6, 7

**Statutes**

28 U.S.C. § 1404(a) ..............................................................7, 13, 15

Cal. Code Civ. Pro. § 377.30 ....................................................21

California Bus. & Prof. Code § 17200............................................18

California Civ. Code § 982 ......................................................12

Copyright Act.................................................................5, 20

Lanham Act.......................................................................20

Wyo. Stat. §2-7-402 ..............................................................3

Wyo. Stat. §2-7-813 ..............................................................3

Wyo. Stat. §§ 2-37, 2-4-101 ......................................................3

Wyo. Uniform Declaratory Judgments Act ......................................5, 6

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

Plaintiff Tim Teichert, Personal Representative of the Estate of Minerva Teichert ("**Plaintiff**" or the "**Teichert Estate**"), hereby opposes Defendants Motion to Transfer Venue (the "**Motion**"), including on the grounds set forth hereinafter.[1]

## I.   INTRODUCTION

This case centers on intellectual property held by the Teichert Estate, including but not limited to the copyright registrations for at least thirty-one famous works of American Western art as well as works revered by adherents of the Church.

In the Motion, Defendants misrepresent the scope of the facts in dispute as well as the nature of the legal claims asserted in the Complaint.  Contrary to Defendants' efforts to confuse this Court, this is *not* a case concerning ownership of chattel. That is an entirely distinct case in a separate dispute being litigated in Wyoming.  Rather, this case concerns, *inter alia*, the copyrights in and to Minerva Teichert's works and the Defendants' demonstrated infringement of them.

This is not only the first case addressing the copyrights to the works at issue, it is also the only case being litigated by all of the parties to this dispute. Further, this case directly implicates California residents and consumers, including those the Church has targeted with cease and desist demands alleging its ownership of copyrights in Minerva Teichert's works.  Thus, Defendants' misguided effort to minimize this dispute to a few physical works in Wyoming – that, in turn, concern nearly century-old facts – should be rejected.

---

[1] "**Defendants**" shall mean and refer to, collectively, the Church of Jesus Christ of Latter-day Saints (the "**Church**"), Defendant Brigham Young University ("**BYU**"), Defendant Brigham Young University Museum of Art ("**BYU Museum of Art**"), Defendant Deseret Management Corporation ("**Deseret Management**"), Defendant Deseret Book Company ("**Deseret Book**"), and Defendant Latter-day Home LLC ("**Latter-day Home**").

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

The core allegations in this case concern Defendants' infringement and wrongful use of Plaintiffs' intellectual property in the twenty-first century. Moreover, Plaintiff has every reason to believe that Defendants have marketed, sold, and/or distributed infringing works in this State, which is home to nearly 11-times more Church members (presumably, Defendants' primary consumer base) than Wyoming, by the Church's own statistics.

The burden is on Defendants to present "strong grounds" for transferring this case away from Plaintiff's chosen forum. For the reasons detailed herein, they have fallen woefully short of carrying that burden. Therefore, the Motion should be denied and this case should be permitted to proceed before this Court.

## II.    RELEVANT FACTUAL BACKGROUND

### a.    The Teichert Estate Owns the Copyrights in Minerva Teichert's Works

Minerva Bernetta Kohlhepp Teichert ("**Minerva Teichert**") was a 20th-century American painter celebrated for her art depicting Western and religious subjects. Compl. ¶ 1. Minerva Teichert was devoted to the Church and her faith, and therefore many of Minerva Teichert's paintings tell stories of the Mormon religion. *Id.* ¶ 2. During her lifetime, Minerva Teichert created thousands of paintings. *Id.* ¶ 29.

At the time of her death, Minerva Teichert was the owner of the intellectual property rights, including without limitation any and all copyrights, in and to the paintings she created during her life and any and all rights in and related to the use of her name, image, photo and likeness. *See id.* ¶¶ 29-33.

Wyoming law clearly provides that although title to Minerva Teichert's property passes to the heirs upon her passing, all such property is subject to possession of the personal representative and to the control of the court for the

purposes of administration, sale or other disposition under the provisions of law. Wyo. Stat. §2-7-402.   Plaintiff is the personal representative of the Teichert Estate, pursuant to his appointment as Administrator of the Teichert Estate on March 26, 2018 by the District Court, Third Judicial District, County of Lincoln, State of Wyoming and remains so to this day.  Compl. ¶¶ 6, 31. Indeed, the District Court Judge presiding over the Teichert Estate's probate proceedings recently ordered that the Teichert Estate remain open and the time for administering the Teichert Estate be extended to March 8, 2024.  Van Loon Decl. ¶ 3 (Order of April 20, 2023).

Under the Wyoming intestate statutes, generally the surviving spouse is entitled to one-half of the estate and the residue is distributed to the children. Wyo. Stat. §§ 2-37, 2-4-101. Once the Teichert Estate is completely administered, there will be an Order from the Wyoming District Court determining the heirs of Minerva Teichert and their respective interests in the Teichert Estate assets.  Wyo. Stat. §2-7-813.

Therefore, during this time in which the Teichert Estate is, for the first time, being probated, the Teichert Estate is the rightful owner of, *inter alia,* numerous artworks created by Minerva Teichert, and any and all intellectual property rights therein, including those protected by registrations granted by the United States Copyright Office.  *See* Compl. ¶ 34, Ex. A.

**b.  Defendants' Infringement and Contacts with California**

Without authorization, Defendants have knowingly reproduced, distributed and displayed Minerva Teichert's paintings without her or the Teichert Estate's permission.  *Id*. ¶ 3.  Defendants have also usurped and misappropriated Minerva Teichert's name and image in order to profit from the sale of unauthorized prints and other infringing products.  *Id*. ¶ 4.

Defendants' marketing and, upon information and belief, sale of

unauthorized and unlicensed Minerva Teichert artwork has been national in scope, and by no means limited to or directed at consumers in Wyoming.  *See id.* ¶¶ 5, 37-40, 48-51, 58-62, 69-73.  In fact, the target market for Defendants' infringing products, which includes members of the Church in substantial part, would consist of many times more residents of California than Wyoming.  *See* Van Loon Decl. ¶¶ 4-5.  According to statistics published by the Church itself, the California market for Mormon-focused artwork is orders of magnitude larger than the market in Wyoming, as evidenced by the following: (1) Total Church Membership: California: 734,989, Wyoming: 67,454; (2) Total Number of Stakes: California: 147, Wyoming: 19; (3) Total Number of Congregations: California: 1,189, Wyoming: 172; (4) Total Number of Temples: California: 7, Wyoming: 1. *Id.*

Since filing the Complaint, Plaintiff has also learned that the Church has wrongly represented to third parties that it is the owner of, *inter alia*, the copyrights in Minerva Teichert's artwork.  Van Loon Decl. ¶ 6.  In fact, the Church has demanded that at least one California resident cease and desist her use of Minerva Teichert's works on the basis of the Church's alleged ownership and right to grant licenses with respect to the same.  *Id.*

Therefore, the Church has a robust and continuous presence in this State, has actively sought to sell infringing copies of Minerva Teichert's works in this State, and has (improperly) sought to enforce intellectual property rights pertaining to Minerva Teichert's works through communications directed to this State and received by a California resident.

### c.    The Wyoming Litigation

On October 23, 2020, Tim Teichert ("**Mr. Teichert**"), as personal representative of the Teichert Estate and the Estate of Herman Teichert, filed suit against the Church, the Corporation of the Presiding Bishop of the Church

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

of Jesus Christ of Latter-day Saints, and the Corporation of the President of the Church of Jesus Christ of Latter-day Saints.  Victorson Decl., Ex. A [Dkt. 38-1].

Subsequently, Mr. Teichert re-filed a substantially similar complaint in Wyoming state court on June 15, 2021.  *Id*., Ex. B.  Shortly thereafter, the Church removed the case to the United States District Court for the District of Wyoming.  *Id*., Ex. C.  The District of Wyoming assigned the action Case No. 21-cv-00145-ABJ, which is referred to herein as the "**Wyoming Litigation**."

The parties to the Wyoming Litigation are Mr. Teichert, as personal representative of the Teichert Estate and the Estate of Herman Teichert, as plaintiff, and the Church as the named defendant.  *See id*., Ex. D.   In the Wyoming Litigation, Mr. Teichert has asserted claims for conversion under Wyoming state law and for declaratory relief pursuant to Wyoming's Uniform Declaratory Judgments Act.  *Id*.

The Wyoming Litigation is limited to a dispute concerning three original paintings by Minerva Teichert that were placed in the Cokeville Ward Meetinghouse many years ago.[2]  Further, the issue in dispute there is narrowly focused on whether the Teichert Estate or the Church is the rightful owner of the original four paintings and whether the Teichert Estate is entitled to immediate delivery of the subject works.  *Id*.  In other words, the Wyoming Litigation is directed to specific chattel.   Neither party to the Wyoming Litigation is asserting a claim of copyright infringement there, nor is either party seeking a declaration with respect to ownership of any copyright interests.[3]  That is emphasized by Mr. Teichert's prayer for relief in the

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Complaint.  Dkt. 1.

[3] In the Wyoming Litigation, the Church stipulated to Mr. Teichert filing the operative Amended Complaint, which does not seek relief pertaining to copyright interests or assert a claim pursuant to the Copyright Act.

Wyoming Litigation, which expressly requests a judicial declaration stating the following: (1) The Church does not have legal title to the subject paintings; (2) Legal title to the subject paintings is held by the Teichert Estate and/or the Estate of Herman Teichert; (3) The Church converted the paintings for its own use; and (4) The subject paintings should immediately be returned to Mr. Teichert as administrator of the estates. *Id.* (Amended Complaint at p. 8).

Both the Amended Complaint and the Church's Answer to the Amended Complaint in the Wyoming Litigation reference the Teichert Estate's ownership of copyright registrations for three of the Minerva Teichert paintings that were placed in the Cokeville Ward Meetinghouse.  *Id.* ¶ 18; Victorson Decl., Ex. H (the Church's Answer ¶ 18).  While Defendants attempt to make a big deal of this in the Motion, it is an overblown effort. There is a single reference to copyright registrations in the Amended Complaint (which is nothing more than a statement of fact: that Plaintiff owns copyright interests in three specific works) and, moreover, it is not a required element of any claim asserted by Mr. Teichert in the Wyoming Litigation.

The Wyoming Litigation is currently set for trial starting on May 6, 2024.  Van Loon Decl. ¶ 7.  Fact discovery and expert depositions are set to close on September 8, 2023.  *Id.*

### III.   LEGAL STANDARDS

#### a.     "First to File" Rule

"The 'first-to-file' rule allows a district court to transfer, stay, or dismiss an action when a complaint involving the same parties and issues has already been filed in another district."  *Tricom Research, Inc. v. Tactical Support Equipment, Inc.*, Case No. CV 08–2130–RGK (PLAx), 2008 WL 11338513,

---

Defendants' attempt to use an inoperative pleading as a sword should therefore be rejected.  *See* Mot. at 1:18-20.

at *1 (C.D. Cal. June 27, 2008) (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982)).  There are three threshold factors to be considered with respect to applying the first to file rule: "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues."  *Id.* (citing *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994)).

"Generally, under the first-to-file rule, when cases involving the same parties and issues are filed in two different districts, the court with the later-filed action has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy."  *Awarepoint Corp. v. KMW Group, Inc.*, No. 11-cv-2893-H (RBB), 2012 WL 13028110, at *1 (S.D. Cal. Jan. 26, 2012) (citing *Cedars-Sinai Med. Ctr. V. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)).  "Pursuant to the rule, 'when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with the second action.'"  *Id.* (quoting *Pacesetter Sys.,* 678 F.2d at 94-95).

### b.    Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), a district court has discretion to "transfer any civil action to any other district or division where it might have been brought" when transfer would serve "the convenience of parties and witnesses" and would be "in the interest of justice."  28 U.S.C. § 1404(a).  Under this section "two findings are required for proper transfer: (1) the transferee district court is one where the action might have been brought, and (2) the convenience of the parties and witnesses and the interest of justice favor transfer."  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

Defendants bear the burden of establishing that transfer to the District of Wyoming is appropriate.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495,

497 (9th Cir. 2000) (burden is on moving party).  The movant must present "strong grounds" for transferring the action away from the plaintiff's choice of venue.  *Safarian v. Maserati North America, Inc*., 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008) (citing *Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 843 (9th Cir. 1986)).

In evaluating the propriety of a requested transfer, courts in the Ninth Circuit typically consider the following private and public interest factors:  (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof, in addition to the relevant public policy of the forum state.  *Jones*, 211 F.3d at 498–99; *see also Earth Island Institute v. Quinn*, 56 F.Supp.3d 1110, 1117 (N.D. Cal. 2014).

## IV.   ARGUMENT

### a.   The First-to-File Rule Is Inapplicable

The "first to file" rule is inapplicable here.  Of the three threshold factors to be considered, only the first factor ("the chronology of the two actions") favors application of the rule in this case.[4]  The other two factors – the similarity of the parties and the similarity of the issues – strongly support declining to apply the rule and, therefore, permitting this action to proceed before the Court.

### i.   Only One of the Defendants is a Party to the Wyoming Litigation

---

[4] Plaintiff does not contest that the Wyoming Litigation was filed prior to this action.

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Only one of the Defendants, the Church, is a party to the Wyoming Litigation.  *See* Victorson Decl., Ex. D.  The Wyoming Litigation does not involve BYU, the BYU Museum of Art, Deseret Management, Deseret Book, or Latter-day Home, the other Defendants to this case.  *Id.*  As such, even if the Motion is denied, the same parties will *not* be litigating two separate cases, as only the Church and the Teichert Estate are parties to the Wyoming Litigation.  For this reason alone, the first to file rule does not apply here.

The Church's assertion that the "parties in the present case and the parties in the Wyoming Litigation are virtually identical" is wrong and should be rejected.  *See* Mot. at 8:13-14.  So too should its suggestion that because all of the other Defendants "are wholly owned or controlled by the Church" they are somehow encompassed within the scope of the Church's involvement in the Wyoming Litigation.  *See id.* at 9:1-5.  They are not.  The Church's position is inconsistent with the "general rule [that] a 'parent corporation ... is not liable for the acts of its subsidiaries.'"  *Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1120 (C.D. Cal. 2010) (quoting *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal citations omitted)); *see also E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. CV F 03-5412 AWI LJO, 2008 WL 2220396, at *5 (E.D. Cal. May 27, 2008) ("Only in unusual circumstances will the law permit a parent corporation to be held either directly or indirectly liable for the acts of its subsidiary.").

The Church is a party to the Wyoming Litigation because it has wrongfully asserted physical control over four paintings that it does not own and refuses to return them to the Teichert Estate, their rightful owner.  Meanwhile, Plaintiff's claims in this case are the result of Defendants' demonstrated infringement of copyright interests held by Plaintiff as well as their unfair competitive practices as to numerous works.  *See* Compl. ¶¶ 28,

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

37-42, 48-53, 58-65, 69-75.   Plaintiff is not seeking to hold any one of the Defendants liable due to the fact that they are under common ownership or control.  Rather, Plaintiff alleges that each Defendant is liable for its own acts of infringement and unfair competition.

Accordingly, the substantial differences between the parties in this case and those in the Wyoming Litigation are material to the first to file analysis.  This is not duplicative litigation involving the same parties, as the first to file rule contemplates.  *See Cedars-Sinai*, 125 F.3d at 769.  Plaintiff has no claims it could have asserted against, for example, Deseret Management or Deseret Books under the facts relevant to the Wyoming Litigation.  Further, BYU's sales of infringing copies of Minerva Teichert's artwork through its internet retail platform(s) are central to Plaintiff's claims here but far afield from what must be proven in the Wyoming Litigation.

As such, the five additional defendants here are not substantially similar and Defendants fail to establish this required element of the first to file rule.

### ii.   The Material Facts and Legal Issues Are Dissimilar

Defendants contort Plaintiff's claims in an effort to suggest that the issues in the Wyoming Litigation substantially overlap with the key issues in this action.  To be clear, it is not Plaintiff's position that there is no factual overlap whatsoever.  Yet, a litany of issues foundational to this case are distinct from those in the Wyoming Litigation, including without limitation: (i) the fundamental nature of the rights being asserted (intellectual property protected by federal law rather than physical property governed by state law), (ii) the scope of the works in dispute (the infringing copies being sold by Defendants in this case extend well beyond the works displayed in the Cokeville Ward Meetinghouse), (iii) the identity of the relevant parties (the six separate

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

Defendants accused of infringement rather than the Church's sole responsibility for converting the Teichert Estate's physical property), and (iv) the conduct alleged to be unlawful (copyright infringement and unfair competition instead of conversion).

It is true that the court in the Wyoming Litigation will determine ownership of the select physical works at issue there. Yet, that determination is wholly distinct from the rights to be adjudicated here and far narrower in scope. A small degree of overlap in the issues presented is insufficient for application of the first to file rule, as "substantial similarity" is required. *See Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc*., 787 F.3d 1237, 1240-41 (9th Cir. 2015); *see also Safari Club Int'l v. Rudolph*, No. SACV 13-1989 JVS (ANx), 2014 WL 12595128, at *3 (C.D. Cal. Feb. 24, 2014) ("Though the substance of the conversation between [the parties] may bear on ongoing litigation in other courts, and indeed [defendant] may bring counterclaims in this Court that are duplicative of his claims elsewhere, [defendant] has not carried his burden of showing that Plaintiffs' choice of forum should be disturbed.").

In support of its contention that the issues are substantially similar, Defendants cite to *Pushman* and similar cases. *See* Mot. at 11:1-14; *Pushman v. N.Y. Graphic Soc'y, Inc.*, 39 N.E.2d 249, 251 (N.Y. 1942). Defendants' extensive "primer" on copyright law to explain why the issues here are similar to those in the Wyoming Litigation misses the mark. *See* Mot. at 9-11. Nowhere in that discussion do Defendants mention conversion or the declaratory relief sought in the Wyoming Litigation. *Id*. Instead, Defendants discuss copyright-specific issues which are in dispute in this case alone.

Defendants' argument is flawed in at least two respects. First, copyright is a right distinct from the right to possess physical property. *See Harris v.*

*Emus Records Corp.*, 734 F.2d 1329, 1336 (9th Cir. 1984) ("The ownership of the copyright is separate and independent from ownership of the material object in which it is embodied."). Defendants fail to meaningfully acknowledge let alone address that distinction in the Motion. Second, Defendants gloss over the fundamentally different scope of the works at issue in the Wyoming Litigation with those set forth in the Complaint. The Wyoming Litigation concerns three specific physical works while this action concerns numerous further works by Minerva Teichert, and Plaintiff anticipates the universe of relevant works will only grow as discovery unfolds. *See* Compl. ¶¶ 34, 39, 50, 60, 71.

Defendants' assertions with respect to *Pushman* and its progeny are irrelevant to the Wyoming Litigation but material to the issues in dispute here (although Defendants' mischaracterize the applicable law in the Motion). Specifically, Defendants ignore relevant United States Supreme Court precedent that clearly established that, at common law, transfer of a physical work is distinct from the right to multiply copies. *See Stephens v. Cady*, 55 U.S. 528, 530-31 (1853) ("Even the transfer of the manuscript of a book will not, at common law, carry with it a right to print and publish the work, without the express consent of the author, as the property in the manuscript, and the right to multiply the copies, are two separate and distinct interests.") (citing *Millar v. Taylor*, 4 Burr. 2303, 98 ER 201 (1769)). The Court need not decide now whether *Pushman* has any relevance to the issues in this case,[5] rather than to say that the copyright issues presented in the Complaint are manifestly distinct from the physical property matters in the Wyoming Litigation.

---

[5] Plaintiff asserts, among other things, that *Pushman's* holding is contrary to the United States Supreme Court's decision in *Stephens*. *Pushman* was a decision of the New York Court of Appeals, not a federal court. Further, the misguided rule set forth in *Pushman* has been reversed in New York by statute and expressly rejected under California Civil Code § 982.

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

1    Therefore, the issues in the Wyoming Litigation are not substantially

2  similar to the issues presented in the Complaint.  For this additional reason, the

3  first to file rule is inapplicable here.

4              **b.**    **28 U.S.C. § 1404(a) Does Not Justify Transfer**

5    Defendants have failed to establish that Plaintiff could have initiated this

6  suit in the District of Wyoming.   Further, the *Jones* factors weigh

7  overwhelmingly against transfer of this action.  As such, Plaintiff should be

8  permitted to prosecute its claims against Defendants in this forum.

9              **i.**    **Defendants Fail to Establish that Plaintiff Could**
10                     **Have Brought This Case In Wyoming**

11    In the Motion, Defendants fail to establish that Plaintiff could have filed

12  this case in the District of Wyoming.   As a result, the Motion is fatally

13  defective, as that required element is unmet.  *See Anschutz Co v. Deutsche*

14  *Bank Securities, Inc*., No. C 09-03780 SI, 2010 WL 1464375, at *2 (N.D. Cal.

15  April 13, 2010) ("To support a motion for transfer, the moving party must

16  establish: 'that venue is proper in the transferor district; that the transferee

17  district is one where the action might have been brought; and that the transfer

18  will serve the convenience of the parties and witnesses and will promote the

19  interests of justice.'") (quoting *Goodyear Tire & Rubber Co. v. McDonnell*

20  *Douglas Corp*., 820 F. Supp. 503, 506 (C.D. Cal. 1992)).  For this reason alone,

21  the transfer Defendants request in the Motion should be denied.

22    Defendants offer mere conclusory assertions that Plaintiff could have

23  filed this action in the District of Wyoming, which notably are not supported

24  by the declarations Defendants filed in support.  *See* Motion at 13:11-23.  This

25  is exemplified by Defendants' bald assertion that "The District of Wyoming

26  also has personal jurisdiction over all Defendants."   *Id*. at 13:11.   This

27  contention lacks evidentiary support.

28

First, Defendants admit that "each Defendant is a Church entity organized under Utah law." *Id*. at 13:12. That assertion certainly does not establish that the District of Wyoming would have personal jurisdiction over any of the Defendants. Accordingly, this representation of fact does not support Defendants' theory that the case could have been brought in Wyoming.

Second, Defendants' attempt to tie Plaintiff's allegations regarding Defendants' contacts with California to Wyoming is a non-starter. *See* Mot. at 13:13-22. Indeed, Defendants fail to state any *facts* that would support the District of Wyoming having personal jurisdiction over these Utah entities. For instance, Deseret Book, which is owned by Deseret Management [*see* Dkt. 34], operates multiple stores in California and in this District. Compl. ¶ 11. Moreover, Defendants make no mention whatsoever of Deseret Book's or Deseret Management's contacts with the State of Wyoming. To this day, Plaintiff is unaware of Deseret Book or Deseret Management having any presence in Wyoming, and Defendants' Motion adds no clarity to the picture. The same is true for Defendant Latter-day Home. As such, Defendants unsupported assumption that the District of Wyoming "has personal jurisdiction over all Defendants" should be rejected.

Finally, Defendants reference that the "Church has not contested personal jurisdiction in the Wyoming Litigation." Mot. at 13:22-23. Defendants' offer this background in an apparent attempt to suggest that the remaining Defendants would follow the Church's example and consent to jurisdiction in the District of Wyoming. Yet, the facts relevant to the Wyoming Litigation make clear that the Church contesting jurisdiction there would be utterly baseless, as the core issues relate to, *inter alia*, physical paintings that were long located in Wyoming, the Church's activities in Wyoming, and the Church Ward Meetinghouse in Cokeville, Wyoming. *See generally* Section

II(c), *supra*.  The material facts here are fundamentally different, as set forth herein, thereby making Defendants' attempt to bootstrap the Church's position on personal jurisdiction to Defendants in this case completely unavailing. Attorney argument alone on such a fundamental component of the Section 1404(a) analysis is insufficient and enough to merit denial of the Motion.

### ii.    Plaintiff's Choice of Forum

"Despite the broad discretion afforded the district court in determining whether to transfer venue, a plaintiff's choice of venue is generally accorded deference." *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009) (finding that this factor weighed against transfer despite neither plaintiff being a citizen of the Central District of California); *see also* § 3848 Standard In Considering Transfer—Plaintiff's Privilege of Choosing Forum, 15 Fed. Prac. & Proc. Juris. (4th Ed.) (citing voluminous case law for the proposition that "the balance of convenience must be 'strongly' in favor of the moving party before a transfer will be ordered under Section 1404(a).").

Here, this forum was chosen by Plaintiff.  "For purposes of a Section 1404(a) analysis, the plaintiff's choice of forum always weighs against transfer." *Brown v. Abercrombie & Fitch Co*., No. 4:13-cv-05205 YGR, 2014 WL 715082, at *3 (N.D. Cal. Feb. 14, 2014); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (holding, in context of forum *non conveniens* motion, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

That Plaintiff elected to prosecute its claims against Defendants in this forum is reasonable and in accordance with the facts as Plaintiff understands them.  The Central District of California is home to many thousands of members of the Church, whom are integral to the market for Minerva

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

Teichert's copyrighted works.  Van Loon Decl. ¶ 4.  Indeed, Plaintiff has specifically alleged that Defendants have promoted, advertised, marketed, offered for sale, and sold unauthorized Minerva Teichert prints and artwork in California.  Compl. ¶¶ 15-16.  Moreover, multiple Defendants conduct business and other affairs through physical locations in this District, including storefronts, temples, and congregations. Compl. ¶¶ 11, 13, 16; Van Loon Decl. ¶ 4.  Further, the Church has previously sought to enforce certain of the copyrights in dispute against California residents.  Van Loon Decl. ¶ 6. Accordingly, Plaintiff's choice of this forum weighs strongly against transfer.

### iii.    Defendants Have Failed to Identify Witnesses for Whom this Court is Inconvenient

Throughout their twenty-two page brief, Defendants fail to specifically identify a single witness for whom Wyoming would be a more convenient forum than California.  Indeed, Defendants did not identify any "key party witnesses" or state "what their testimony will include in light of the claims at issue in this case." *See Lax v. Toyota Moto Corp*., 65 F. Supp.3d 772, 779 (N.D. Cal. 2014).

Instead, Defendants make vague and generalized assertions of inconvenience for witnesses, such as: "Defendants are not aware of a single witness likely to be called in this case who resides in California" and "all known witnesses pertaining to the transfer and ownership of the disputed paintings are residents of Wyoming or Utah."  Mot. at 14:17-20.  Who are those witnesses located in Wyoming? How is Wyoming a more convenient forum for Utah residents?  Defendants do not answer such plainly relevant questions.  Such a failure is a fatal shortcoming in Defendants' Motion. *See Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002) ("The party seeking a transfer cannot rely on vague generalizations

as to the convenience factors.  The moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include."); *see also Anschutz Co*, 2010 WL 1464375, at *3 ("Since defendant does not identify witnesses who would be inconvenienced by a trial in California or provide a convincing argument that a significant amount of the relevant evidence is located in New York, neither the convenience of witnesses nor ease of access to the evidence favors the motion to transfer venue.").

To the extent Defendants identify any witnesses, they mention Marian Wardle and Laura Howe, both of whom Plaintiff understands are Utah residents, not Wyoming residents.  *See* Mot. at 14:23-25.  In any event, in identifying their relevant knowledge, Defendants fail to connect these witnesses' knowledge to the infringement and unfair competition alleged in the Complaint.  *See id*. at 14:26-15:3.  Instead, Defendants resort to conflating the issues in this case with those to be tried in the Wyoming Litigation.  But, the material issues here differ substantially, and relevant witnesses would include, without limitation, those with knowledge of Defendants' marketing, sales, and distribution of Minerva Teichert's works as well as persons with knowledge of Defendant's licensing and policing activities with respect to Minerva Teichert works (even if Defendants engaged in such activities without the right to do so).  Is the District of Wyoming substantially more convenient for witnesses with knowledge of those material issues?  Defendants are conspicuously silent on that in the Motion.

Defendants also cite to readily distinguishable authority in support of their assertions of inconvenience for Ms. Wardle.  *See* Mot. at 15:3-8 (quoting *CoxCom, Inc. v. Hybrid Patents Inc*., No. 06-cv-07918, 2007 WL 2500982, at *2 (N.D. Cal. Aug. 30, 2007)).  In *CoxCom*, the claims asserted in the Northern

District of California were "in the nature of a defense to a claim of infringement" while a pending action in Texas concerned infringement claims asserted by the defendant in the California action.  *Id.*  In other words, the court found that "the same defenses raised [in the California action] are asserted as defenses [in the Texas action]."  *Id.*  That is plainly not the case here, as none of the claims asserted in either action overlap.  *Compare* Amended Complaint in the Wyoming Litigation [Victorson Decl., Ex. D] (asserting Declaratory Judgment and Conversion) *with* Compl. [Dkt. 1] (asserting Copyright Infringement, False Endorsement and Unfair Competition under the Lanham Act, Unfair Competition in violation of California Business & Professions Code § 17200, and Unfair Competition under California common law).

Additionally, Gina Teichert, a key witness with knowledge of Defendants' wrongful assertions of ownership of the copyrights in Minerva Teichert's works, resides in California.  *See* Van Loon Decl. ¶ 6.  Her experience purchasing Minerva Teichert works from certain Defendants and receiving a cease and desist communication from the Church with respect to the same bears directly on Plaintiff's allegations and the harm the Teichert Estate has suffered as a result of Defendants' actions.  Gina Teichert would be significantly inconvenienced if this action were transferred to Wyoming.  Further, employees of Deseret Management and Deseret Book who work in the retail stores located in this District have knowledge of Defendants' sales of unauthorized prints of Minerva Teichert works.  *See* Compl. ¶¶ 11, 16, 61-62.  Being forced to travel to Wyoming to give testimony would be a substantial inconvenience for those witnesses, as well. Therefore, the convenience of the witnesses factor weighs against transfer.

### iv.    The Parties' Contacts With California, Including those Relating to Plaintiff's Claims, Weigh Against Transfer

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

Defendants' contacts with California are continuous and substantial. In particular, the Church has substantial real estate, religious facilities, and hundreds of thousands of members in California. Van Loon Decl. ¶ 4. BYU recruits, markets, and engages in a range of commercial, athletic, and academic activities in California. *See* Van Loon Decl. ¶ 8 (California is the second most represented state among BYU students). Deseret Management, at a minimum by and through its wholly owned subsidiary, Deseret Books, operates a number of retail storefronts in California and this judicial district. Compl. ¶¶ 11, 16.

Specific to Plaintiff's claims, Defendants have offered, and continue to offer, infringing copies of Minerva Teichert works through, *inter alia*, a number of Internet sites under their control and retail locations in the State. *See* Compl. ¶¶ 15-16, 38-39, 49-50, 59-60, 70-71. Further, Defendants have sought to enforce intellectual property rights in Minerva Teichert's artwork against at least one California resident and have sent communications into the State for that purpose. Van Loon Decl. ¶ 6. Discovery will reveal the full extent of Defendants' sales of, *inter alia*, infringing copies of Minerva Teichert works to California residents and their distribution of such works into the State. Yet, given the size of the market for Mormon-themed artwork in California, Plaintiff expects such sales numbers to be substantial, and certainly far in excess of any sales made to persons in Wyoming where there are more than 660,000 fewer Church members. *See* Van Loon Decl. ¶¶ 4-5.

Defendants' conclusory allegation in the Motion that "the controversy is localized in Wyoming" should also be disregarded. *See* Mot. at 16:10-12. It is Defendants' burden to establish the parties' contacts with Wyoming are relevant to this case. Defendants cannot meet this burden. Indeed, as set forth herein, the suggestion that this case concerning copyright and unfair competition is focused on Wyoming is completely wrong and untethered from

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

the primary liability and damages issues. *See*, *e.g.*, *Safari Club Int'l v. Rudolph*, No. SACV 13-1989 JVS (ANx), 2014 WL 12595128, at *3 (C.D. Cal. Feb. 24, 2014) (denying motion to transfer despite the parties already being engaged in litigation in two separate federal courts). Therefore, this factor weighs against transfer to the District of Wyoming.

### v.    California Is Most Familiar with the Claims Asserted Under California Law

Half of the claims asserted by Plaintiff are pursuant to California state law. Compl. ¶¶ 98-110.  This Court is certainly more familiar with California's Business and Professions Code as well as the state's common law than the District of Wyoming.  While "this factor weighs only slightly against transfer" since "other federal courts are fully capable of applying California law," this is yet another factor that favors permitting this case to proceed before this Court.  *See Ocampo v. Heitech Services, Inc.*, No. 4:19-cv-4176-KAW, 2019 WL 5395108, at *4 (N.D. Cal. Oct. 22, 2019).

Defendants assert that "The District of Wyoming is best positioned to apply the laws and principles . . . to the facts here."  Mot. at 17:5-6.  That is plainly not the case, as both courts are equally capable of applying the Copyright Act and the Lanham Act and adjudicating all necessary issues connected to Plaintiff's claims under those statutes.  *See Allstar Marketing Group, LLC*, 666 F. Supp. 2d at 1133 ("As plaintiffs' claims are primarily federal trademark and copyright claims, however, th[is] factor carries little weight. Courts in this district and the Eastern District of Wisconsin are equally capable of applying federal law.").  To the extent Wyoming state law is implicated in that analysis, which Defendants' insist but do not clearly demonstrate, it is necessarily in connection to the claims asserted here, which this Court is unquestionably able to address.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' also make a passing suggestion that this Court will need to determine "the rights and powers Tim Teichert has as the personal representative of Minerva Teichert's estate in pursuing these claims." Mot. at 17:7-10.   Yet, Defendants cite to no authority in support of their implicit argument that a duly appointed personal representative of an estate, such as Plaintiff, lacks the right and power to pursue an action that survives the death of the person entitled to commence such an action. *Id*.; *see also* Compl. ¶¶ 6, 31 (setting forth Plaintiff's appointment as administrator of the Teichert Estate). Nor could they, as Plaintiff is the proper party to assert the claims in the Complaint. *See* Cal. Code Civ. Pro. § 377.30 ("A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, subject to Chapter 1 (commencing with Section 7000) of Part 1 of Division 7 of the Probate Code, and *an action may be commenced by the decedent's personal representative* or, if none, by the decedent's successor in interest.") (emphasis added). For the foregoing reasons, this factor weighs against transfer of this action.

### vi.  Ease of Access to Sources of Proof Weighs Against Transfer

While "the 'ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations,'" this factor still weighs against transfer. *See Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009) (quoting *Szegedy v. Keystone Food Products, Inc.*, No. CV 08-5369 CAS (FFMx), 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009)). For one, Defendants do not list any specific documents that would be located in Wyoming and not readily accessible in California. *See*, *e.g*., Mot. at 15:9-10.   Instead, Defendants resort to mere conclusory

assertions in an effort to mask the weakness of their position on this factor. *See id.* ("The documents in this case will also be easier to access in the District of Wyoming, which is closer to the physical location of such documents.  All documents at issue here are controlled either by (1) Defendants in Utah and Wyoming; or (2) as alleged, Plaintiff in Wyoming.").  Simply mentioning the alleged existence of "documents at issue" without specifying what those are is not enough for Defendants to carry their burden on this element.

Further, to the extent there are relevant sources of proof in Wyoming, Defendants admit that the parties have already produced over 400 documents in the Wyoming Litigation.  *See* Declaration of Larry R. Laycock in Support of Defendants' Motion to Transfer Venue ¶ 7 [Dkt. 37-3].  Thus, for any of those documents that would be relevant to the issues in dispute here, there would be no accessibility issues whatsoever as the parties are already in possession of those documents.  As for any documents that are accessible only in Utah, those favor the case remaining in this Court, as there are many times more daily direct flights from Salt Lake City to Los Angeles than to Cheyenne or elsewhere in Wyoming.  Van Loon Decl. ¶ 9.

Moreover, as stated herein, the relevant market for Defendants' infringing sales is substantially larger in this judicial district, such that evidence of Defendants' wrongful conduct is likely to be located in this forum during discovery.  In addition, evidence of the Church's efforts to enforce Minerva Teichert's intellectual property rights against Gina Teichert is also likely more accessible in California than Wyoming.  *See* Van Loon Decl. ¶ 6. Therefore, this factor weighs against transfer.

### vii.   Compelling Attendance of Non-Party Witnesses Weighs Against Transfer to Wyoming

"The most important factor to consider on a motion to transfer venue is

the convenience of third party witnesses." *Guinago v. Datalogix Texas Inc.*, No. 2:14-cv-02103-SVW-Ex, 2014 WL 12688862, at *1 (C.D. Cal. June 5, 2014) (citing *Burke v. USF Reddaway, Inc.*, No. 2:12-cv-02641-KJM-GGH, 2013 WL 85428, at *4 (E.D. Cal. Jan. 8, 2013)). "If a material third-party witness is within the subpoena power of the transferee forum, but not the transferor forum, transfer may be appropriate." *Id.* (citing *In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010)).

Here, Defendants have not pointed to a single non-party witness who is within the subpoena power of the District of Wyoming but not the Central District of California. In contrast, Plaintiff is aware of at least one material witness who is subject to this Court's subpoena power but not that of the District of Wyoming: Gina Teichert. *See* Van Loon Decl. ¶ 6. Moreover, given the size of the market for Mormon-themed works in California, there is likely a substantial number of individuals who will be able to testify regarding purchases of unauthorized prints sold by Defendants'. Therefore, this factor weighs against the requested transfer of venue.

### viii.   The Remaining Jones Factors Are Neutral

Given the absence of relevant written agreements in this matter, that factor under *Jones* is neutral as to the propriety of transfer. While Defendants mention the lack of relevant agreements negotiated or entered into in California, they insinuate that agreements may have been executed in Wyoming or Utah. *See* Mot. at 21:1-2. Yet, Defendants do not identify what those agreements are or specify where any such agreements were executed. If the suggestion is that Minerva Teichert's oral agreement with the Cokeville Ward bishop in the mid-1900's is the basis for this factor favoring transfer to Wyoming, Defendants' contention should be rejected as the ensuing seven decades substantially divorce those facts from considerations of convenience

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

or justice in this proceeding.  *See* Compl. ¶¶ 18-21.  Additionally, the relevant *Jones* factor is "the location where the relevant agreements were negotiated and executed," which clearly contemplates the location of *written* agreements. *See Jones*, 211 F.3d at 498-99.  Since Defendants cite no relevant written agreements in Wyoming, and Plaintiff is not presently relying on written agreements executed in California, this transfer factor is neutral. Further, Plaintiff anticipates that discovery will reveal, *inter alia*, sales contracts between Defendants and California residents pertaining to the works in dispute.

Defendants also assert that transfer to the District of Wyoming is "more cost-effective" and "will likely result in consolidation and faster resolution." Mot. at 18-19, without mentioning the number of ways in which transfer would make this dispute at least as costly and certainly no faster to resolution.

First, the primary material facts here – including the significant number of Minerva Teichert works, Defendants' commercial activities with respect to those works, Defendants' revenues and profits derived from their sales of Minerva Teichert works, and Plaintiff's copyright interests in those works – necessitate a wide range of discovery that has not occurred in the Wyoming Litigation, nor has it needed to.  As a result, the discovery needed on these issues, among others, would need to take place regardless of whether the case remains before this Court or the District of Wyoming.  This discovery would cause tremendous delay to the Wyoming Litigation, in which discovery is set to close this summer.  *See* Van Loon Decl. ¶ 7.  Accordingly, Defendants' assertions that "efficiencies" can be achieved for witness depositions and expert discovery should be rejected out of hand.

Relatedly, getting to resolution of the distinct issues being litigated in the Wyoming Litigation would be unduly delayed while the separate issues

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE

relevant to this dispute go through, *inter alia*, the fact and expert discovery processes.  In light of the fundamental differences between the two cases, such an outcome cannot be reconciled with Defendants' contrary assertion that "[c]onsiderations of judicial economy strongly favor transferring this case to the District of Wyoming."  Mot. at 19:6-7.  To the extent there are any efficiencies gained, they are at least equally matched by the inefficiencies and delays that would ensue following transfer.

Second, Defendants' cherry pick data to suggest that transfer to the District of Wyoming would "facilitate a faster resolution of this matter."  Mot. at 20:7-12 (calculating that there are "299 pending civil cases per active judge in the Central District of California" and "85 pending civil cases per active judge in the District of Wyoming").  Omitted from Defendants' citation to data published by the federal courts is that the median time from filing to disposition of civil actions is six-and-a-half months *shorter* in this judicial district than the District of Wyoming (4.7 months to 11.3 months).  Van Loon Decl. ¶¶ 10-11.  It is also notable that the data published in 2022 lacks any data for the median time from filing to trial in civil cases for the District of Wyoming, which undermines Defendants' attempt to tie data regarding pending cases per judge to "faster resolution of this matter."  *Id*. Therefore, in light of the above, this factor is neutral at best and certainly does not weigh in favor of transfer.

## V.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to transfer venue in full.  In the alternative, Plaintiff respectfully requests leave to conduct expedited limited discovery to determine the extent of, *inter alia*, Defendants' infringing sales and other activities into this forum.

Dated:  April 27, 2023

Respectfully submitted,

**NIXON PEABODY LLP**

By: _/s/ Erica J. Van Loon_

Erica J. Van Loon (Bar No. 227712)
evanloon@nixonpeabody.com
Andrew H. Winetroub (Bar No. 291847)
awinetroub@nixonpeabody.com
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Tel: (213) 629-6000
Fax: (213) 629-6001

David L. May (Admitted *Pro Hac Vice*)
dmay@nixonpeabody.com
Jennette W. Psihoules (Admitted *Pro Hac Vice*)
jpsihoules@nixonpeabody.com
NIXON PEABODY LLP
799 9th Street NW
Washington, DC 20001-4501
Tel: (202) 585-8000
Fax: (202) 585-8080

*Attorneys for Plaintiff*
*Tim Teichert, Personal Representative of the*
*Estate of Minerva Teichert*

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE