LATHAM & WATKINS LLP
  Andrew M. Gass (SBN 259694)
    andrew.gass@lw.com
  505 Montgomery Street, Suite 2000
  San Francisco, California 94111-6538
  415.391.0600 / 415.395.8095 (Fax)

  Sarang Vijay Damle (*pro hac vice*)
    sy.damle@lw.com
  Holly K. Victorson (SBN 305595)
    holly.victorson@lw.com
  555 Eleventh Street, NW, Suite 1000
  Washington, DC 20004
  202.637.2200 / 202.637.2201 (Fax)

  Allison S. Blanco (SBN 287554)
    allison.blanco@lw.com
  650 Town Center Drive, 20th Floor
  Costa Mesa, CA 92626-1925
  714.540.1235 / 714.755.8290 (Fax)

*Attorneys for Defendants*
The Church of Jesus Christ of Latter-day Saints, Brigham Young University, Brigham Young University Museum of Art, Deseret Management Corporation, Deseret Book Company, and Latter-day Home LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| TIM TEICHERT, PERSONAL REPRESENTATIVE OF THE ESTATE OF MINERVA TEICHERT,<br><br>Plaintiff,<br><br>v.<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, BRIGHAM YOUNG UNIVERSITY, BRIGHAM YOUNG UNIVERSITY MUSEUM OF ART, DESERET MANAGEMENT CORPORATION, DESERET BOOK COMPANY, and LATTER-DAY HOME LLC,<br><br>Defendants. | CASE NO. 8:23-cv-00180-FWS-JDE<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE**<br><br>Judge: Hon. Fred W. Slaughter<br>Hearing Date: May 18, 2023<br>Time: 10:00 AM<br>Courtroom: 10D |

# TABLE OF CONTENTS

                                                          **Page**

I. INTRODUCTION ...................................................................................1

II. ARGUMENT ..........................................................................................3

    A. The First-To-File Rule Justifies Transfer...................................3

        1. The First-to-File Rule Requires Only "Substantial Similarity" of the Parties, and the Parties Here Are Substantially Similar. ..............................................................3

        2. The Issues Are Substantially Similar Because the Circumstances Under Which Minerva Teichert's Paintings Came Into the Church's Possession Are Relevant to Plaintiff's Copyright Claims.................................4

    B. § 1404(a) Separately Justifies Transfer......................................6

        1. Plaintiff's Choice of Forum Should Be Given Little to No Weight. ..........................................................................6

        2. Personal Jurisdiction Is Appropriate in Wyoming if It Is Appropriate in California.......................................................6

        3. Plaintiff's Manufactured California Connections Should Be Afforded Little Weight..............................................7

        4. Transferring This Case Will Not Cause Delay. ......................10

III. CONCLUSION.....................................................................................10

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC,*
   666 F. Supp. 2d 1109 (C.D. Cal. 2009) .................................................................6

*Cedars-Sinai Med. Ctr. v. Shalala,*
   125 F.3d 765 (9th Cir. 1997) .................................................................................3

*Elite Physicians Servs., LLC v. Citicorp Credit Servs., Inc. (USA),*
   No. 06-cv-00086, 2007 WL 1100481 (E.D. Tenn. Apr. 11, 2007) .......................4

*Glob. Décor, Inc. v. Cincinnati Ins. Co.,*
   No. 11-cv-02602, 2011 WL 2437236 (C.D. Cal. June 16, 2011) ........................9

*Jones v. GNC Franchising, Inc.,*
   211 F.3d 495 (9th Cir. 2000) .................................................................................9

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.,*
   787 F.3d 1237 (9th Cir. 2015) ..................................................................... 1, 3, 4

*Lather, Inc. v. Gilchrist & Soames, Inc.,*
   No. 19-cv-05868, 2020 WL 1140760 (C.D. Cal. Mar. 9, 2020) ..........................9

*Metz v. U.S. Life Ins. Co. in the City of N.Y.,*
   674 F. Supp. 2d 1141 (C.D. Cal. 2009) .................................................................6

*Parton v. Prang,*
   18 F. Cas. 1273 (Clifford, Circuit Justice, C.C.D. Mass. 1872)
   (No. 10,784) ..........................................................................................................5

*Pushman v. N.Y. Graphic Soc'y, Inc.,*
   39 N.E.2d 249 (N.Y. 1942) ...................................................................................5

*Riverview Med. Ctr. v. F.A. Davis Co.,*
   No. 08-cv-03770, 2008 WL 4754874 (D.N.J. Oct. 27, 2008) ..............................5

*Ruoey Lung Enter. Corp. v. Tempur-Pedic Int'l, Inc.*,
  No. 09-cv-00675, 2009 WL 10675241 (C.D. Cal. Sept. 14, 2009) ...................... 4

*Sertant Cap. LLC v. Element Fleet Corp.*,
  No. 18-cv-01234, 2018 WL 11354477 (C.D. Cal. Dec. 4, 2018) ........................ 2

*Stephens v. Cady*,
  55 U.S. (14 How.) 528 (1853) ........................................................................... 5

*Stomp, Inc. v. NeatO, LLC*,
  61 F. Supp. 2d 1074 (C.D. Cal. 1999) .............................................................. 6

*Thomas v. Woods*,
  No. 13-cv-09389, 2014 WL 12598869 (C.D. Cal. Aug. 26, 2014) .................... 10

**STATUTES**

17 U.S.C. § 501(b) ................................................................................................. 9

Wyo. Stat. Ann. § 2-7-402 ..................................................................................... 8

**RULES**

Fed. R. Civ. P. 11(b)(3) ....................................................................................... 10

Fed. R. Civ. P. 26(b)(2)(C) .................................................................................... 8

Fed. R. Civ. P. 30(b)(6) ......................................................................................... 8

Fed. R. Civ. P. 45(d)(1) ......................................................................................... 8

## I. INTRODUCTION

Plaintiff's pending action in the District of Wyoming ("Wyoming Litigation") seeks to resolve factual questions about the circumstances under which Minerva Teichert donated three paintings once displayed in the Cokeville Ward Meetinghouse ("Cokeville Paintings") to the Church. The Wyoming Litigation is in federal court because Plaintiff sought a declaration of ownership not just for the physical Cokeville Paintings themselves, but also for the federal copyrights therein.[1]  ECF No. 37 ("Mot.") at 3–4. The very same Cokeville Paintings are at issue in this case, and this Court will need to decide the very same factual questions about their transfer to the Church.

That alone is sufficient to justify transfer under the first-to-file rule. Contrary to Plaintiff's claim, the first-to-file rule does not require exact identity of the parties and issues—only "substantial overlap." *See Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240–41 (9th Cir. 2015). Indeed, Plaintiff recently agreed to extend the discovery schedule in the Wyoming Litigation specifically because there is substantial overlap between the two cases. Plaintiff admitted in a joint stipulation that "the parties in the California action are substantially similar to the parties in the Wyoming Litigation . . . [and] the issues in the Wyoming Litigation substantially overlap with the issues in [the] California case." Victorson Decl. Ex. A at 2 (capitalization altered). Although Plaintiff attempted to walk back its admission a week later, it continued to acknowledge that "there certainly is some overlap in the parties in both cases." Victorson Decl. Ex. B at 2.

---

[1] To the extent Plaintiff now attempts to abandon copyright claims in the Wyoming Litigation so that it can maintain those claims in this Court, permitting Plaintiff to do so would raise a serious question about the ability of the Wyoming court to maintain subject matter jurisdiction over that action. Transfer of this case to the District of Wyoming would resolve any jurisdictional issues that might arise from Plaintiff's gamesmanship.

Transfer to the District of Wyoming is also appropriate under 28 U.S.C. § 1404(a). Plaintiff's purported California connections in this dispute are thin. Although Plaintiff alleged in its complaint that "contracts . . . oblige these parties to litigate disputes thereunder in this judicial district," Compl. ¶ 17, Plaintiff has pointed to no such contracts, and it appears that allegation is entirely without evidentiary support. Moreover, the California witnesses proposed by Plaintiff add nothing to the case, and this suit and the Wyoming Litigation will turn on identical Wyoming-based evidence. Again, Plaintiff has acknowledged as much in the Wyoming Litigation, stipulating that "substantial judicial economy and avoidance of waste of both party and judicial resources may be achieved through conducting joint fact and expert discovery" in the two disputes. Victorson Decl. Ex. A at 2. (Plaintiff made no attempt to back away from that stipulation.) When considering "holistically where these two interconnected lawsuits should proceed," the "interest of justice, and especially the consideration of judicial economy, is the most important factor of all." *Sertant Cap. LLC v. Element Fleet Corp.*, No. 18-cv-01234, 2018 WL 11354477, at *4 (C.D. Cal. Dec. 4, 2018) (internal quotation marks omitted). The interest of justice here strongly favors transfer.

In sum, when Plaintiff selected Wyoming as its forum to litigate ownership of the Cokeville Paintings, it asked the District of Wyoming to resolve a core set of disputed facts. Those disputed facts are also at issue here. The Court should not afford Plaintiff two chances to obtain a favorable factual determination. That is particularly true in this case, where differing determinations in two courts would create a conflicting and unclear path forward for all parties. Instead, the Court should transfer this case to the District of Wyoming, where it can be consolidated with the pending Wyoming Litigation.

## II. ARGUMENT

### A. The First-To-File Rule Justifies Transfer.

The first-to-file rule requires consideration of the "chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn*, 787 F.3d at 1240. Only the last two factors are disputed here.

#### 1. The First-to-File Rule Requires Only "Substantial Similarity" of the Parties, and the Parties Here Are Substantially Similar.

Plaintiff objects that the parties are not "substantially similar" because only one defendant overlaps across the two cases. ECF No. 40 ("Opp.") at 8–10. To begin with, that directly contradicts Plaintiff's representation that "the parties in the California action are substantially similar to the parties in the Wyoming Litigation." Victorson Decl. Ex. A at 2 (capitalization altered); *see also* Victorson Decl. Ex. B at 2 ("[T]here certainly is some overlap in the parties in both cases . . . ."). In any event, "exact identity of the parties" is not the correct legal standard. *Kohn*, 787 F.3d at 1240. If it were, Plaintiff would be able to "skirt the first-to-file rule merely by [adding] one party [to] a second lawsuit." *See id.* The Ninth Circuit has rejected such gamesmanship. Plaintiff's reliance on an out-of-context recitation from *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765 (9th Cir. 1997), Opp. at 10, does not change the prevailing standard set forth in *Kohn*.

Here, the five non-Church defendants are not isolated accused infringers connected only by their alleged infringing activities. The Church controls the other defendants, ECF No. 37-2 ¶ 9, and Plaintiff has made the same general allegations for all Defendants, *see, e.g.*, Compl. ¶ 28 ("The Church and/or one or more of its related or affiliated entities, has mass reproduced, distributed and/or sold prints or other reproductions of Minerva Teichert's paintings without authorization . . . ."). Courts "generally hold that privity or affiliation between/among defendants [across

1  suits] is sufficient to find" substantial similarity between parties. *See Elite*
2  *Physicians Servs., LLC v. Citicorp Credit Servs., Inc. (USA)*, No. 06-cv-00086,
3  2007 WL 1100481, at *3–4 (E.D. Tenn. Apr. 11, 2007).
4    Moreover, contrary to Plaintiff's assertions, Opp. at 9–10, the first-to-file
5  rule does not require a conclusion that the Church will be held vicariously liable
6  for the actions of the entities it controls. It merely requires that the other parties
7  "represent the same interests" as the Church. *See, e.g.*, *Ruoey Lung Enter. Corp. v.*
8  *Tempur-Pedic Int'l, Inc.*, No. 09-cv-00675, 2009 WL 10675241, at *2 (C.D. Cal.
9  Sept. 14, 2009) (internal quotation marks omitted) (parties are "substantially
10 similar" under the first-to-file rule when they have "similar interests"). All
11 Defendants in this case seek to prove that their conduct accords with their
12 respective rights in the disputed paintings, including the Cokeville Paintings that
13 form the factual background for the claims against all Defendants. *See* Compl.
14 ¶¶ 18–28.

15    **2.   The Issues Are Substantially Similar Because the**
16         **Circumstances Under Which Minerva Teichert's Paintings**
17         **Came Into the Church's Possession Are Relevant to**
18         **Plaintiff's Copyright Claims.**

19    The first-to-file rule requires only that the issues in both cases be
20 "substantially similar." *Kohn*, 787 F.3d at 1240. Plaintiff admits that there is
21 factual overlap between this case and the Wyoming Litigation. Opp. at 10.
22 Plaintiff also admits that the Wyoming Litigation will determine the circumstances
23 under which the Church came to possess the Cokeville Paintings. *Id.* at 11. What
24 Plaintiff fails to acknowledge is that the same factual determinations *also* go to the
25 heart of Plaintiff's copyright claims. *Cf. Kohn*, 787 F.3d at 1240–41 (finding
26 issues substantially similar where the question to be resolved was "at the 'heart' of
27 the" first-filed action). If the District of Wyoming finds that Minerva Teichert
28

unconditionally transferred ownership of the Cokeville Paintings, those works may be in the public domain pursuant to the doctrine of divestive publication. *See* Mot. at 9–10. Their copyrights may also belong to the Church under the *Pushman* doctrine. *Id.* at 11. Moreover, the same factual questions surrounding the transfer of the Cokeville Paintings will arise with respect to the additional works at issue here. *See id.* at 10–11.

Although Plaintiff derides the copyright "primer" in the opening brief, Opp. at 11, it fails to actually engage with the substance of the law described therein. First, it fails entirely to address the doctrine of divestive publication, which necessarily turns on the facts surrounding Minerva Teichert's relinquishment of her paintings.

Second, Plaintiff challenges the *Pushman* case on the ground that it is inconsistent with dicta in a Supreme Court case decided nearly a century earlier. *See* Opp. at 12 & n.5 (citing *Stephens v. Cady*, 55 U.S. (14 How.) 528 (1853)). But *Pushman* discussed that dicta and expressly declined to follow it. *Pushman v. N.Y. Graphic Soc'y, Inc.*, 39 N.E.2d 249, 251 (N.Y. 1942); *see also Parton v. Prang*, 18 F. Cas. 1273, 1277–78 (Clifford, Circuit Justice, C.C.D. Mass. 1872) (No. 10,784) (distinguishing *Stephens* and holding that "it is well settled law that even copyright is an incident to the ownership of a manuscript, and that it passes at common law with the transfer of a work of art"). Plaintiff does not suggest that Wyoming (the state where any transfers likely occurred) did not adopt the *Pushman* rule or assert that Wyoming abrogated that rule by statute prior to the transfers. In any event, the approach that the Wyoming courts would have adopted in the early twentieth century is a question of Wyoming law best resolved by a Wyoming court. *See infra* section II.B.3.b; *Riverview Med. Ctr. v. F.A. Davis Co.*, No. 08-cv-03770, 2008 WL 4754874, at *3–4 (D.N.J. Oct. 27, 2008) (transferring a case requiring "detailed review and application" of transferee court's state law).

### B. § 1404(a) Separately Justifies Transfer.

#### 1. Plaintiff's Choice of Forum Should Be Given Little to No Weight.

Plaintiff insists that its forum choice is entitled to deference. Opp. at 15–16. But again, it fails to engage with the law. As explained, Mot. at 21–22, courts in this District afford little weight to the plaintiff's chosen forum where, as here, "the forum is not the primary residence of either the plaintiff or defendant." *Metz v. U.S. Life Ins. Co. in the City of N.Y.*, 674 F. Supp. 2d 1141, 1146 (C.D. Cal. 2009) (internal quotation marks omitted). That alone negates any deference to Plaintiff's forum choice. *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009) ("Neither plaintiff is a citizen of this forum. . . . [T]he court [thus] accords [plaintiffs' choice] little weight.").

#### 2. Personal Jurisdiction Is Appropriate in Wyoming if It Is Appropriate in California.

Plaintiff claims that the District of Wyoming lacks personal jurisdiction over Defendants. Opp. at 13–15. But the basis for personal jurisdiction in California is no different than the basis for personal jurisdiction in Wyoming. Plaintiff alleges that Defendants sell the disputed works "throughout the United States" via their websites. Compl. ¶¶ 38, 40, 49, 51, 58–59, 61, 69–70, 72. Plaintiff's jurisdictional hook based on "promotion, advertising, marketing, offering for sale and sale" must therefore apply equally to California and Wyoming, regardless of total sales. *Id.* ¶ 15; *see Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (finding personal jurisdiction based solely on web sales and noting that jurisdiction can exist even when "the actual number of sales . . . [is] small"). Furthermore, the Church already consented to personal jurisdiction in the Wyoming Litigation, and it will (along with all other defendants) consent to personal jurisdiction in the District of Wyoming if necessary.

### 3. Plaintiff's Manufactured California Connections Should Be Afforded Little Weight.

Plaintiff's attempts to manufacture connections to this District are outweighed by what Plaintiff cannot dispute: that all parties are located outside of this state, that witnesses (including third parties) key to the factual issues in this case are located outside of this state and should not be required to testify on the same matters twice, and that the key events and agreements at the heart of this matter occurred outside of this state. Indeed, Plaintiff stipulated in the Wyoming Litigation that it sought an extension of discovery deadlines in order to conduct joint discovery with respect to overlapping issues. Victorson Decl. Ex. A at 2–3.

#### a. Witnesses.

Contrary to Plaintiff's incorrect contention, Opp. at 16, Defendants identified third-party witnesses whose testimony will be key to the ownership issues at the heart of both cases. These third parties, Marian Wardle and Laura Howe, should not be subjected to discovery over the same issues in both Wyoming and California. *See* Mot. at 14–15; ECF No. 37-3 ¶ 9.

The only potential third-party witness Plaintiff identifies is Gina Teichert. Opp. at 18. But Ms. Teichert does not appear to live in this District, and she would have to travel to either Wyoming or this Court to testify. Victorson Decl. Ex. C ("Based in rural Napa County, California and ready to travel[.]"). It is also unclear what Ms. Teichert could say pertaining to the claims in this case. She might testify to the authenticity of the alleged communication in Plaintiff's Exhibit D, but Plaintiff does not allege that she has personal knowledge of, *e.g.*, whether Plaintiff owns valid copyrights or the circumstances of the alleged infringing or unfair acts described in the complaint. Ms. Teichert is not a "key witness."

Plaintiff also argues that transfer to Wyoming will inconvenience defendant Deseret Book's California-based retail employees. Opp. at 18. The likelihood that

such employees would testify here is negligible. Defendants would strenuously object to taking discovery from retail employees of Deseret Book in their individual capacities. Such discovery would be unreasonably cumulative and duplicative, unduly burdensome, and harassing of Deseret Book's individual employees, particularly because Plaintiff has made no suggestion that it will not be able to obtain documentary or 30(b)(6) testimonial evidence regarding the sales information it seeks. *See* Fed. R. Civ. P. 26(b)(2)(C), 30(b)(6), 45(d)(1).

### b. Familiarity with State Law.

To the extent there are any viable California state law claims alleged here, Plaintiff admits that the District of Wyoming is fully capable of applying the relevant California law to the facts. Opp. at 20.

On the other hand, there are complex issues of Wyoming law at issue in this case. *See* Mot. at 8 & n.3, 16–17. The District of Wyoming is best positioned to sort out those issues, which go well beyond applying the federal statutes in the complaint and will touch on issues of Wyoming property law including intestate succession, probate, ownership, and possession. For example, Defendants do not concede that "the Teichert Estate is the rightful owner of" the artworks or intellectual property at issue. *See* Opp. at 3. Indeed, the Wyoming statute cited by Plaintiff states that "*when a person dies* the *title* to his property, real and personal, passes to . . . the persons who succeed to his estate," even though property may still be "subject to the *possession* of the personal representative" for disposition purposes. Wyo. Stat. Ann. § 2-7-402 (emphases added). The plain language of the statute states that the title (legal ownership) of any intellectual property held by Minerva Teichert passed automatically to her heirs when she died. Whatever it means under Wyoming law for an estate to have "possession" of intangible property such as a copyright interest, the statute does not appear to grant the estate *legal ownership* of the copyrights, which is necessary to give the estate standing to

sue for copyright infringement. *See* 17 U.S.C. § 501(b). In any event, the District of Wyoming is best positioned to resolve the underlying questions of Wyoming law that will affect issues of ownership and standing.

### c. Forum Contacts and Contracts.

Plaintiff emphasizes the Church's many members in California and other general contacts that Defendants may have in the state. But the correct inquiry must also examine "the contacts *relating to the plaintiff's cause of action* in the chosen forum." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (emphasis added). The numbers of Church members, storefronts, and enforcement attempts regarding intellectual property not at issue here have nothing to do with the copyright and false endorsement claims in this case.

The allegation that Defendants sold copies of Minerva Teichert works to California residents also does not establish substantial contacts for purposes of the § 1404(a) inquiry. *See Glob. Décor, Inc. v. Cincinnati Ins. Co.*, No. 11-cv-02602, 2011 WL 2437236, at *4 (C.D. Cal. June 16, 2011) (contacts factors "weigh[ed] heavily in favor of transfer" despite sales in California). Even if the Court considers California sales, Plaintiff also alleges that Defendants sold prints of the disputed works "all over the United States," presumably including Wyoming. Giving Plaintiff's argument its full weight would thus render the contacts factors neutral. *See* Compl. ¶¶ 5, 18–28, 40, 51, 61, 72; *Lather, Inc. v. Gilchrist & Soames, Inc.*, No. 19-cv-05868, 2020 WL 1140760, at *5 (C.D. Cal. Mar. 9, 2020). Because the number of prints sold in California cannot affect the result of this Court's transfer analysis, Plaintiff's alternative request for limited discovery regarding California sales should be denied. *See also supra* section II.B.2 (explaining why California sales also cannot affect personal jurisdiction).

Finally, despite Plaintiff's allegation in the complaint that there are "contracts that oblige [the] parties to litigate disputes thereunder in this judicial

district," Compl. ¶ 17, Plaintiff still has not identified a single agreement to back up its assertion. In fact, it appears that Plaintiff has no evidentiary support, and no hopes of developing evidentiary support, for this factual contention. *See* Fed. R. Civ. P. 11(b)(3). The only alleged agreements at issue in this case were formed in Wyoming, Mot. at 20–21, and nothing supports Plaintiff's suggestion that § 1404(a) contemplates only written agreements. *See* Opp. at 24; *Thomas v. Woods*, No. 13-cv-09389, 2014 WL 12598869, at *3 (C.D. Cal. Aug. 26, 2014) (formation of an oral agreement in transferee district "weighs heavily in favor of transfer"). Similarly, if documents describing the alleged agreements Minerva Teichert made regarding her works exist, they most likely exist in Wyoming. To the extent relevant documents have already been produced in the Wyoming Litigation, it would be most efficient to consolidate discovery in a single court.

### 4. Transferring This Case Will Not Cause Delay.

Plaintiff maintains that transfer will lead to inefficiency, in part because more discovery will delay the Wyoming Litigation. Opp. at 24. But this is a peculiar assertion: Plaintiff *agreed to a delay* of the Wyoming Litigation in recognition of the fact that "joint fact and expert discovery" will lead to "substantial judicial economy and avoidance of waste." Victorson Decl. Ex. A at 2. And the District of Wyoming has already adjusted deadlines in response to that request. *See* ECF No. 40-6. In any case, the asserted benefit of denying transfer—a faster determination of the ownership of the Cokeville Paintings—is far outweighed by the risk of inconsistent decisions on overlapping issues regarding the same paintings. *See* Opp. at 24–25; *supra* section II.A.2.

### III. CONCLUSION

For the above reasons, the Court should grant Defendants' Motion to Transfer Venue and deny Plaintiff's request for leave to conduct expedited limited discovery.

| | | |
|---|---|---|
| 1 | Dated: May 4, 2023 | Respectfully submitted, |
| 2 | | LATHAM & WATKINS LLP |
| 3 | | By */s/ Sarang Vijay Damle* |
| 4 | |    Sarang Vijay Damle<br>   Andrew M. Gass<br>   Allison S. Blanco |
| 5 | |    Holly K. Victorson |
| 6 | | *Attorneys for Defendants* |
| 7 | | The Church of Jesus Christ of Latter-day Saints, Brigham Young University, |
| 8 | | Brigham Young University Museum of Art, Deseret Management Corporation, |
| 9 | | Deseret Book Company, and Latter-day Home LLC |

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants The Church of Jesus Christ of Latter-day Saints, Brigham Young University, Brigham Young University Museum of Art, Deseret Management Corporation, Deseret Book Company, and Latter-day Home LLC, certify that this Reply contains 3,166 words, which complies with the word limit of L.R. 11-6.1.  The undersigned also certify that this Reply is 10 pages from Introduction to Conclusion, which complies with the page limit set forth in section VIII.c of this Court's Civil Standing Order (ECF No. 12).

Dated: May 4, 2023

LATHAM & WATKINS LLP

By */s/ Sarang Vijay Damle*
Sarang Vijay Damle
Andrew M. Gass
Allison S. Blanco
Holly K. Victorson

*Attorneys for Defendants*
The Church of Jesus Christ of Latter-day Saints, Brigham Young University, Brigham Young University Museum of Art, Deseret Management Corporation, Deseret Book Company, and Latter-day Home LLC